**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**


GUIDO MAURICIO GARCIA,          :

       Petitioner,          :

vs.                                          :          CA 06-0717-WS-C

ALBERTO GONZALES, etc.,          :
et al.,
                               :
       Respondents.


## REPORT AND RECOMMENDATION

       Guido Mauricio Garcia, a native and citizen of Argentina ordered

removed from the United States and presently being detained by the  U. S.

Immigration and Customs Enforcement ("ICE") arm of the Department of

Homeland Security, has petitioned this Court for habeas relief pursuant to 28

U.S.C. § 2241.[1] This matter has been referred to the undersigned for entry of

a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local

Rule 72.1(c). It is recommended that the instant petition be **GRANTED**,  on

the basis that the removal of petitioner from the United States is not reasonably

---

[1]      Petitioner is in the actual and present physical custody of David O. Streiff, Warden of the Perry County Correctional Center in Uniontown, Alabama. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447, 124 S.Ct. 2711, 2724, 159 L.Ed.2d 513 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement.").

foreseeable, and that petitioner be granted his immediate supervised release from ICE under conditions to be enumerated by ICE.

## FINDINGS OF FACT

1.      Garcia is a native and citizen of Argentina who entered the United States on or about April 22, 1991 as a non-immigrant visitor for pleasure with authorization to remain in the country for a temporary period not to exceed October 22, 1991. (Doc. 14, Notice to Appear) Petitioner remained in the United States beyond this temporary period. (*Id.*).

2.      On June 18, 2003, petitioner entered a counseled guilty plea in the Orange County, New York supreme county court to one count of criminal possession of a controlled substance (cocaine) in the third degree, with intent to sell; he was sentenced to a term of one to three years imprisonment. (Doc. 14, SENTENCE AND COMMITMENT)

3.      On the basis of this conviction, and also because he remained in the United States for a time longer than permitted, ICE began removal proceedings against petitioner. (*See* Doc. 14, Notice to Appear) Garcia was served with the Notice to Appear on October 31, 2003. (*See id.*).

4.      Garcia was taken into ICE custody on February 17, 2004. (Doc. 1, ¶ 6; *see also id.* at ¶ 13 ("ICE [] picked up the Petitioner from Lakeview

Shock Incarceration Facility of New York on February 17th, 2004, and was taken into custody at B.F.D.F.")) On June 8, 2004, Immigration Judge John B. Reid ordered Garcia removed from the United States to his native Argentina. (Doc. 14, ORDER OF THE IMMIGRATION JUDGE) Thereafter, on September 28, 2004, the Board of Immigration Appeals ("BIA") affirmed the immigration judge's decision without opinion. (Doc. 14, Decision of the Board of Immigration Appeals) Garcia filed a petition for review in the Second Circuit Court of Appeals but same was summarily dismissed on November 30, 2005 due to petitioner's failure to comply with the court's scheduling order. (*See* Doc. 14, MANDATE)

5.    Sometime during the latter part of 2006, an ICE Field Office Director in Buffalo, New York penned a "To Whom It May Concern" letter to DHS-ICE, HQCDU in Washington, D.C. (Doc. 14, To Whom It May Concern Letter) "A travel document has been pending with the Consulate of Argentina in New York City since March 13, 2006. A request for assistance with the travel document acquisition was forwarded to HQTDU on July 26, 2006. . . . DRO/Albany, NY and HQTDU are presently working toward obtaining a travel document from the Consulate General of Argentina. Mr. GARCIA has cooperated with all requested actions in this regard, to include telephonic

3

interviews, fingerprinting, and completion of applications/affidavits." (*Id.*)

6.   Garcia filed his petition seeking habeas corpus relief, pursuant

to 28 U.S.C. § 2241, in this Court on October 25, 2006. (Doc. 1)

> **14.**   To date[], ICE has been unable to remove
> petitioner to *Argentina* or any other country, because the country
> does not recognize the petitioner as a Citizen. Nor has the
> Consulate of Argentina issued traveling documents. Also there
> is no certain[ty] as to when, if ever, such travel documents will
> be issued. Petitioner's removal from the United States is not
> significantly likely to occur in the reasonably foreseeable future.
>
> **15.**   Petitioner *has cooperated fully with efforts* by ICE
> to remove him from the United States by providing the ICE-
> Deportation Officers with personal information such as[:] Birth
> Certificate, signed travel-document application(s), photographs
> and fingerprints. Also the petitioner has written letters and
> spoken to the Consulate of Argentina requesting said travel
> documents.

(*Id.* at 4, ¶¶ 14-15)

7.   The federal respondents' answer to Garcia's § 2241 petition

reads, in relevant part, as follows: "As stated in Respondent's Second Motion

for Extension of Time in which to respond to the Petition, the Deportation

Officer assigned to this matter indicated he has recommended that the

Petitioner be released on an order of supervision pending receipt of the travel

documents. The recommendation was concurred in by the Supervising

Reviewing Officer. The review was forwarded to the Headquarters Custody

Determination Unit, however[,] Exhibit 7[] indicates the Field Office Director

recommends continued detention." (Doc. 14, at 4 n.3)

## <u>CONCLUSIONS OF LAW</u>

1.     In *Zadvydas v. Davis*, 533 U.S. 678, 688, 121 S.Ct. 2491, 2498,

150 L.Ed.2d 653 (2001), the Supreme Court determined that "§ 2241 habeas

corpus proceedings remain available as a forum for statutory and constitutional

challenges to post-removal-period detention."

2.     The Supreme Court, in *Zadvydas*, held that the post-removal-

period detention statute, 8 U.S.C. § 1231, "read in light of the Constitution's

demands, limits an alien's post-removal-period detention to a period

reasonably necessary to bring about that alien's removal from the United

States. It does not permit indefinite detention." 533 U.S. at 689, 121 S.Ct. at

2498.

3.     8 U.S.C. § 1231 reads, in relevant part, as follows:

**(a)     Detention, release, and removal of aliens ordered removed**

**(1)     Removal period**

**(A)     In general**

Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period

5

of 90 days (in this section referred to as the "removal period").

### (B) Beginning of period

The removal period begins on the **latest** of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

### (C) Suspension of period

The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

### (2) Detention

During the removal period, the Attorney General shall detain the alien. Under no circumstances during the removal period shall the Attorney General release an alien who has been found inadmissible under section

6

> 1182(a)(2) or 1182(a)(3)(B) of this title or deportable
> under section 1227(a)(2) or 1227(a)(4)(B) of this title.

*Id.* (emphasis supplied). The Supreme Court in *Zadvydas* concluded that six months represents a presumptively reasonable period of time to detain a removable alien awaiting deportation pursuant to the provisions of this statute. 533 U.S. at 701, 121 S.Ct. at 2505 ("While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined

that there is no significant likelihood of removal in the reasonably foreseeable future."); *see Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter.").

4.      In this case, the federal respondents concede, as they must, that the presumptively reasonable six-month detention period has long since passed. (*See* Doc. 14, at 4 ("The Court of Appeals has held that *Zadvydas* does not set out a *per se* rule that mandates an alien's release after six months.")) Garcia's removal period began on November 30, 2005, the date petitioner's petition for review in the Second Circuit Court of Appeals was summarily dismissed. 8 U.S.C. § 1231(a)(1)(B)(ii). Approximately five months elapsed between the end of petitioner's presumptively-reasonable detention period and the filing of the instant habeas corpus petition and another six (6) months has elapsed since the filing of the petition with no confirmation received from the federal respondents that Garcia has been repatriated to his native Argentina or released on conditions established by ICE. Accordingly, Garcia has been detained by ICE now a total of some twenty-six (26) months since being taken into custody on February 17, 2004 and some seventeen (17) months since the beginning of his removal period, November 30, 2005.

8

5.    In *Zadvydas, supra*, the Supreme Court indicated that "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." 533 U.S. at 701, 121 S.Ct. at 2505; *see also id.* at 699-700, 121 S.Ct. at 2405 ("[T]he habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.").

6.    The undersigned concludes that Garcia has provided good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. Petitioner has now been detained by ICE awaiting removal for approximately 17 months--well in excess of the six-month presumptively reasonable period--with no assurances from the Argentinian Embassy in Washington, D.C. that it has forwarded his file to the

Argentinian government to acquire approval for travel documents or that the travel document request lodged by the federal respondents with the Argentinian Consulate in March 2006 likely will bear fruit. *See Seretse-Khama v. Ashcroft*, 215 F.Supp.2d 37, 48 (D. D.C. 2002) ("Based on this record of the continued detention of petitioner awaiting removal for well over three years (far in excess of the six-month presumptively reasonable period), with no success by the INS (and arguably little effort) in obtaining travel documents, the Court concludes that petitioner has met his burden of showing 'good reason to believe that there is no *significant likelihood* of removal in the reasonably foreseeable future.'")).  In fact, the only credible showing made in regard to whether there is an expectation that Garcia will be deported to his native Argentina in the reasonably foreseeable future consists of petitioner's statement in his verified complaint that he has not been removed to his native country or any other country because Argentina does not recognize him as a citizen. For its part, ICE has not provided sufficient evidence to rebut Garcia's showing. In fact, the expressed desire of certain ICE officials that Garcia should be released under conditions pending his removal to Argentina does nothing but underscore petitioner's showing that there is no significant likelihood of his removal in the reasonably foreseeable future given the four

10

months that have elapsed since the federal respondents filed their answer containing the view in favor of release with no production of travel documents for Garcia's deportation to Argentina. *See Andreasyan v. Gonzales*, 446 F.Supp.2d 1186, 1189 (W.D. Wash. 2006) ("Petitioner has now been detained for more than eight months since his order of removal became final on November 17, 2005. Given the time that has passed since the R & R without the production of travel documents, and given that six weeks have passed since Respondents' last request for a 'few more weeks,' this Court now finds that the Government has not responded with enough evidence to rebut Petitioner's claim that removal is not likely in the reasonably foreseeable future.").

7.      It is clear to the undersigned not only that there is no significant likelihood of Garcia's removal in the reasonably foreseeable future but, as well, that his continued detention does not meet the purposes of the statute. As recognized in *Zadvydas, supra*, the purposes of the statute are ensuring the alien's presence at the moment of removal and preventing danger to the community. *See* 533 U.S. at 690, 121 S.Ct. at 2499 (citation omitted). The respondents have parenthetically argued that "[p]etitioner's conviction for a drug crime, establishes both a reason to doubt that he will voluntarily present himself for removal and a reason to believe that he presents a risk to the

11

community of further criminal activity." (Doc. 14, at 4 n.4)

> But by definition the first justification-preventing flight-is weak or nonexistent where removal seems a remote possibility at best. As this Court said in *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), where detention's goal is no longer practically attainable, detention no longer "bear[s] [a] reasonable relation to the purpose for which the individual [was] committed." *Id.*, at 738, 92 S.Ct., at 1845.

> The second justification-protecting the community-does not necessarily diminish in force over time. But we have upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections. . . . In cases in which preventive detention is of potentially *indefinite* duration, we have also demanded that the dangerousness rationale be accompanied by some other special circumstance, such as mental illness, that helps to create the danger.

533 U.S. at 690-691, 121 S.Ct. at 2499.

8.      Given the risk-of-flight analysis by the Supreme Court in *Zadvydas*, the argument made by the federal respondents in this case is adequately countered by the undersigned's earlier determination that petitioner's removal from this country is not reasonably foreseeable.

9.      Relevant to the respondents' argument that petitioner represents a danger to the community, the Supreme Court indicated in *Zadvydas* that "once the flight risk justification evaporates, the only special circumstance present is the alien's removable status itself, which bears no relation to a

12

detainee's dangerousness." 533 U.S. at 691-692, 121 S.Ct. at 2499 (citations omitted). Petitioner's June 18, 2003 conviction for criminal possession of a controlled substance in the third degree, with intent to sell--for which he received a sentence of 1 to 3 years imprisonment--simply does not constitute a crime of violence, nor does this conviction establish that he is a specially dangerous person. Moreover, there is no evidence of any attendant special circumstance in this case, such as mental illness or a volitional impairment. Accordingly, the respondents' danger-to-the-community argument need be rejected.

10.     In light of the foregoing, the undersigned recommends that this Court release petitioner from custody, subject to reasonable conditions ICE deems necessary to ensure Garcia's appearance and return--including those set forth in 8 C.F.R. § 241.5(a)--pending the issuance of travel documents by the Argentinian Embassy to effectuate his removal to his native country. *See Zadvydas, supra*, 533 U.S. at 700, 121 S.Ct. at 2504 ("[T]he alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions."). The release of the petitioner in this case should be particularly expeditious since Garcia has

cooperated fully with ICE officials to expedite his deportation to Argentina and also given the admitted position of certain ICE officials that he should be released under conditions pending his deportation to Argentina.

## **CONCLUSION**

The Magistrate Judge recommends that this Court grant Guido Mauricio Garcia's habeas corpus petition filed pursuant to 28 U.S.C. § 2241 and order his immediate supervised release under conditions set forth by the ICE arm of the Department of Homeland Security.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 30th day of April, 2007.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE